Freeman, J.,
delivered the opinion of the Court.
*574 This action of ejectment was commenced by plaintiffs, tbe heirs of Robert Love, deceased, to recover a tract of land of two hundred and fifty acres,.in Henry county.
The proof shows the land was granted to Robert Love, by Grant No. 1,009, of date May, 1828, by virtue of warrant dated in 1816, and that plaintiffs are his heirs.
The recovery of plaintiffs is resisted by defendant on several grounds growing out of -the following state of facts:
Robert M. Hughes seems to have been living on this land in 1826 or 1828, in a house, as the witness says, inside of a field of about twenty acres, and continued to reside on the land till 1841 or 1842, when he died. "When said Hughes died, he left his family on the place, a portion of whom remained on the place, till, perhaps, 1861, when one Higgs went into possession, as we assume, under the heirs of Hughes, who was succeeded by Kendall, he holding under the heirs of Hughes, until the sale of thirty-one acres of the land by the surviving heirs of Robert M. Hughes, except James, who is not accounted for as far as we can see in the proof, either as being dead, or having sold his claim as heir of the said Robert M.
In January, 1837, Robert M. Hughes seems to have purchased the tract of land from Robert Love, through James B. Love, purporting to be the agent of Robert Love, and took, what is claimed to be a title-bond to make him a title — the con- *575 elusion of said paper being as follows: “now it is understood by tbe parties tbat tbe said Hughes is to defray and pay all taxes tbat may become due hereafter, and to pay to Robert, bis heirs or assigns, tbe aforesaid six hundred and fifty dollars, with interest until paid from this date, and when so discharged, then tbe said Robert Love, by himself or legal representative, is to make a title, and not before; and when done and complied with, the above obligation to be void,” etc. . Hughes gave his two notes for said 'land, due one and two years after date — a large portion of which remains due and unpaid, as far as we can see.
These facts raise the first question presented for our consideration, whether a vendee claiming by title-bond, nothing more appearing, is holding such adverse possession of the land as will bar the right of action of his vendor, who retains the legal title by virtue of the title-bond, as security for payment of the purchase money, so that seven years will give a possessory right to such holder.
In ease of Sheratz v. Nicodemus, 7 Yer., 12, where land was sold and conveyed by deed, and the purchaser held seven years after the notes or a part of them fell due, it was held that the statute of limitations barred a bill filed to enforce.the lien of vendor as to such notes. The principle of this case is, that the possession of a vendee under a deed, although the purchase money is not paid, is adverse to the title of his vendor, and the lien was in the nature of a claim on land, and could *576 not be sued or maintained after seven years, under second section of act of 1819.
The opinion in this case by Judge Catron is short, and the reasoning by which he reached his conclusion not given at length. "We may pass from this case, however, as it was a case of land conveyed by deed, and the plaintiffs in this case insist, has no application to the present case.
The next case in which the relation in which vendor and vendee stand to each other, is discussed by this Court, is that of Ray v. Goodman, 1 Sneed, 587.
That was a case of sale made, and title-bond given, the legal title being retained by the vendor. A bill was filed to enforce the vendor’s lien, more than seven years after the notes for purchase money fell due, and the Court held that the possession of-the vendee for seven years, under his title-bond, gave the vendee a right of possession that could not be disturbed by the vendor’s bill,' and that the lien of the vendor was barred by section 2, act of 1819. In fine, the Court decided that the holding of the vendee was adverse as to the possession of the land, and that such adverse holding operated to bar the suit to enforce the lien, on the assumption, that the bill for the enforcement of the lien, was a suit in equity for the land, or in the language of the Court, “to take the land for the satisfaction of the notes for the purchase money.” p. 588. The argument of the Court is based on the language of the second section of act of *577 1819: that no “person shall have any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his right to commence' such action shall have accrued; and that all suits, either in law or equity, for the recovery of • any ■ lands, tenements or- hereditaments, shall be had and sued within seven- years next after the title or cause of action or suit hath so accrued,” etc.'
"We have examined carefully the opinion of the Court on this question, and as it is one of importance, we are urged by counsel, in . arguments of great ability, to review the subject, and to overrule this decision.
What, then, is the position of the vendee in possession of land purchased by him, for which he holds the bond of his vendor for title and has given the vendor his notes for payment of the purchase money.
The vendee has purchased the land for himself, and not for another, either his vendor, or any one else. He owes no fealty to the seller, and in claiming to hold in opposition to him, or in refusing to surrender the possession to him, he is guilty of no breach of faith; - on the contrary, his claim to hold for himself is consistent with his contract, under which he was let into possession: James v. Patterson, 1 Swan, 311; 10 Hum., 220.
Some confusion has grown up on this question, by 'transferring the feudal idea of subordination or fealty, that attached to the transfer of every fee, *578 to tbe simple fact with, us, of a purchase absolutely, where no subordination, subinfeudation or holding under, in truth, belongs to the relation of the parties. The condition annexed .to every grant of a feud or fee, by the feudal system was, that the possessor should do service faithfully, both at home and in the wars, to him by whom they were given, for which purpose he took the juramenimn fidelitas, or oath of fealty; and in case of breach of this condition, by not performing the stipulated service, or by deserting the lord in battle, the lands were again to revert to him who granted them: 2 Black. Com., 37, 38. No one, we apprehend, will assert, that on failure to pay purchase money, the contract, ipso facto, ended, and that the seller could immediately enter for condition broken, or that this was the contract of the parties.
So far, then, ' as the possession of the land under the title-bond goes, it is a possession for himself, and adverse to the right of possession of the vendor, so that, if such vendee shall hold possession under the title-bond, and purchase evidenced by it, seven years, he would be protected against any possessory action, or action in law or equity, on the part of the vendor, in which the vendor should seek to oust him of his possession, and obtain it for himself.
But the question .recurs, is the lien retained by the vendor, and his suit in equity for its enforcement, an action for the possession of the land, as *579 between Mm and Ms yendee? We bold it is not in fact, or ■ in law.
By tbe contract between tbe parties, tbe vendor •does not retain tbe legal title, tbat be may bave a right of entry on failure of vendee to pay tbe purchase money. He retains tbe legal title by which be bolds in bis bands tbe right to file a bill in a court of equity to enforce tbe payment of bis purchase money. Tbe vendee goes into possession under this contract, bolding in view of it, and under its stipulations. Tbe vendor does not understand tbat tbe possession of tbe land by tbe vendee is being held for him, or tbat bis possession is to inure to bis benefit, or operates to perfect . any right or title in him. Can it be fairly said, then, tbat tbe vendee is, to be regarded as bolding contrary. to bis purpose and intent, and contrary to tbe contract of tbe parties. Does be not bold in perfect accord with tbe contract of tbe parties, when, as to tbe possession against tbe vendor, be is regarded as bolding for himself? ■
But, on tbe contrary, can it be said with any fairness of reasoning, tbat tbe vendor is not bold-ing tbe legal title in precise accord with tbe terms of bis contract, or tbat so bong as tbe purchase money is not paid, nor bis right to it disavowed by tbe vendee, and no claim is set up under any other contract, nor any abandonment of tbe one between himself and tbe vendor, tbat tbe possession of tbe land can be held to be adverse to tbe *580 right of the vendor; which is not a right to the possession, but a different right — that is, a right to enforce the payment of his debt, by a proceeding in a court of equity, by which the land will be sold, in accordance with the contract still remaining between the parties, and the proceeds — not the land — be paid to the vendor, till his debt is discharged, and the surplus, if any, to the vendee, as money arising from the sale of his property?
The error in the reasoning of the Court in case of Ray v. Goodman, is in assuming that the vendor’s bill is for the possession of the land, or to assert a title to it, or right of possession of it for himself. No such right is sought, or claimed by virtue of the lien or retention of the title, till the purchase money is paid.
The possession of 1 the vendee, under a title-bond, is not then, in our opinion, adverse to the lien or right contracted for by the vendor, but is strictly consistent with its existence.
We must hold this, unless we maintain that a party can hold seven years in subordination to, and in accordance with, a right in another, and at the end of that period assert that his position was adverse. This would allow him for the first time, at the end of the seven years, to assume an adversary position, and make it retroact for' seven years, so as to defeat a right, given a party by contract, and which right he held over the vendee, so to speak, at all times, during that period, by continuing to hold the legal title, and which the *581 vendee was not entitled to have' delivered, or surrendered to him, till he should pay the price- of the land.
"We hold then, that there is no adverse holding, as against this right, simply by reason of the possession of the land under the title-bond. To hold the contrary, is to violate the integrity of the contract of the parties, and to work by law, an injustice which the vendee in possession probably seldom purposes.
"What rule is applicable as to lapse of time? Ye hold, that the contract is one precisely like that of a mortgage or trust to secure a debt in all its essential elements; and being an express rela-tiou of trust, by contract, the same presumption of satisfaction should apply to the case, and not the ordinary statute of limitations intended to quiet titles and give security to possession.
The reason why the statutes of limitations do not apply to a bill in equity to redeem a mortgage is, that the right of redemption can only be enforced in equity, and the statute for limitations of actions at law do not apply to cases belonging to the exclusive jurisdiction of a court of equity: Overton v. Bigelow, 8 Yer., 513; Yarborough v. Newell, 10 Yer., 380, 381, and this applies with perfect accuracy to the lien of a vendor, whether retained on face of a deed, or created by contract, by retention of legal title for payment of purchase money.
If, however, a mortgagee purchase an outstand *582 ing title, and hold it adversely to the mortgagor, and such adverse possession he with the knowledge of the mortgagor, then the statute of limitations may run in his favor, as he holds under his new title, and it will perfect the title in him, if he holds seven years, under a title purporting to convey a fee simple, or protect his possession if under title of less dignity: Wallen v. Huff, 5 Hum., 91-94.
This view of the case settles the principle as to the character of the holding of the vendee as to possession, and also, as to rights of vendor, by means of the retention of legal title till the purchase money is paid.
On looking at the paper presented in the record, as the title-bond given by Love to Hughes, we see that it gives no boundaries of the land, nor has it anything on its face by which the limits of the claim, or extent to which Hughes held, is defined.
On well-settled principles, it is, as evidence of a contract for the purchase of land, void for uncertainty as to the description of the land sold, and is not such a memorandum of the contract of sale of land as is required by the statute of frauds. It has no description of the land, except in the condition of the bond. It is recited “that whereas this day Robert Hughes has purchased a certain tract of land of John B. Love, agent of Robert Love, of North Carolina” — in another part of it, it said on payment of the purchase money “the said Robert *583 is to make him a deed to two hundred and fifty acres, where the said Robert Hughes now lives, be the same more or less.”
From the face of this instrument no court could say that any certain land, as exclusive of any other land, is contracted to be conveyed. "Where shall the lines be, or in what direction shall they run, or within what metes and bounds shall the court on a bill for specific performance, decree the vendee’s claim lies? If this contract is to be executed, and not one proved by parol, then it does not on its face contain that certainty that would enable a court of equity to execute it.
The contract is to make a title to land. It ought on its face to contain such description of the land which is to be conveyed, as that a court can from the face of it say what land is ’sold, and direct a conveyance thereof,- as was the former practice, or under the present practice, make a decree divesting the title of the land out of vendor, and vesting it in the vendee, so that on the face of the decree, based on the contract of the parties, as written out and signed by the party to be charged, the same would present a muniment of title as specific as a deed; for the decree is to be registered as a conveyance, instead of a deed. This is in accordance with the ■ policy of the statute of frauds, and in analogy with all otir forms of conveyance, whether at common law, or under our statutes or Code, where in every case, the description of the land . sold, with such cer *584 tainty by metes and bounds, or with reference to natural objects, or other sufficient description to identify the land, has been uniformly required. In other words, it should contain a description and identification of the land, with reasonable certainty, not with reference to some other fact, that might upon investigation lead to parol evidence from which it might be identified — as the land on which a man lives, and two hundred and fifty acres of it. "Where shall it be surveyed ? in which direction from his dwelling or field? Such description is entirely too uncertain for practical' purposes, and opens the door to all the mischief against which the statute of frauds was intended to guard; that is, verbal evidence of the contract of the parties, in reference to one of the material elements, to-wit: the particular land sold. This requirement has no difficulty in it, as all our lands have been surveyed, and are included in well’ defined boundaries, or adjoin to other tracts, that have been so surveyed, so that it is culpable carelessness in parties if they fail to describe the land sold with such certainty as is herein indicated. This principle has been repeatedly alluded to in our own decisions, and is, we think, fairly established. See Reed’s Lessee v. Dodson, 1 Tenn. R., Coop. ed., 396; 4 Hay., 140, 142; as to entries. Pipkin v. James, 1 Hum., 325, 327; Sheid v. Stamps, 2 Sneed, 176; Blair & Gillenwaters, v. Snodgrass & Lyon, 1 Sneed, 25, 27; Wright v. Cobb, et als, 5 Sneed, 144, 145; 2 Lead. Cas. in Eq., 710.
*585 This paper, then, could only he looked to as defining the boundaries or extent' of vendee’s possession, hut not so defining it, he would only be protected to extent of actual possession or occupation for seven years, other things being out of the way.
But the question is presented of a former adjudication of the question, which it is maintained is conclusive.
The facts on which this question is raised are as follows. The defendants in this case introduced and read to the jury, under objection, which was overruled, the record of proceedings had in the Chancery Court of Iienry county, in the case of Robert T. Clarke, Administrator, etc., of Albert G-. Love, deceased, which was a bill filed by ’ said Clarke as administrator, etc. aforesaid, claiming that the testator of said Love had become owner of the notes given for the purchase money of the land, by assignment from Robert Love, setting out the fact of the sale of the land in 1837, by Love to Hughes, giving the boundaries of the land here sued for, and seeking the enforcement of the vendor’s lien for the payment of the notes. To this bill, the heirs of Robert Love, the present plaintiffs, are parties, together with the heirs of Hughes, the original purchaser.
The court on demurrer, held that the lien was barred by reason of lapse of seven years from the time the notes fell due, or at any rate the opinion of the court held the lien 'barred by the second *586 section of act of 1819. On appeal to the Supreme Court, Judge Shackleford affirmed the chancellor’s decree, dismissing the hill, saying, “ the right of the complainant to enforce his lien for the unpaid purchase money is barred by the statute of limitations — the second section of act of 1819.” It will he seen that the very land in controversy in this ejectment, is specifically set out and described, and the lien sought to be enforced against it, and the heirs of Love — the plaintiffs here — and Hughes’ heirs, are parties to the suit.
Is this an adjudication of the question of seven years adverse possession between the parties, that estops these parties — plaintiffs—from recovering in this case?
The general rule, long established, and well understood is, that the judgment or decree of a court of competent jurisdiction upon a question directly involved in the suit, is conclusive in a second suit between the same parties, depending on the same question, although the subject-matter of the second action be different. Thus, in a case where two notes were given for the purchase of a schooner, and one of them had been sued on in a court of competent jurisdiction, to which the defense had been made, that the schooner was rotten and unseaworthy, and the sale, fraudulent, and the defense was sustained, and defendant had judgment in his favor; subsequently, the vendor brought suit on the second note, in another court, and the defendant gave in evidence the record in the former *587 case, in which the sale was adjudged to he fraudulent, and insisted on it as a bar to the second suit, and it was held by the Supreme Court of blew York, that the first judgment was a bar to the recovery: Gardner v. Buckbee, 3 Cowan, 120. See also Doty v. Brown, 4 N. Y. Court of Appeals R., 75, and cases cited.
The principle to be deduced from the cases is, that the judgment is conclusive, because the same question was determined in the first suit, on which the second depended, and between the same parties.
This principle would seem to be conclusive of the question in this case at the first giance at the question. The fact was unquestionably adjudged on this bill, that Hughes had held possession of the land for more than seven years, adversely as against Love and his heirs; for it is held because of such holding the lien was barred under the second section of the.act of 1819.
Upon examination, however, it will be seen that this adjudication, though upon the same facts, and with the same parties to the suit, was made in a proceeding in which the heirs of Love were not in position to contest the question. . They were defendants to the bill; but suppose they had answered, and denied all its allegations, and shown that Hughes had attorned to Robert Love within seven years — had acknowledged he held under him, and the lien still existed; yet the bill would have been dismissed on the theory of the law as held by the court on the subject.
*588 ¥e hold, therefore, that in order to tire conclusiveness of the adjudication in a case, even as between the same parties nominally, the parties who are to be concluded, must have been in position to controvert the conclusion arrived at in the case sought to be set up as a bar. This was not the case here, and the decree on this question cannot be held to be conclusive of the rights of the parties.
There is a deed from Z. IT. "Williams in the record, to Christopher IT. Hughes, a son of Kobert Hughes, the original purchaser, dated in November, 1856. Christopher died in 1862 or 1863, leaving his other brothers and sisters his only heirs, who conveyed by a deed dated in 1867, thirty-one acres of the land in controversy to defendant Barnes. The brother and sister of Christopher took by descent the benefit of the title of Christopher Hughes, and if the land was actually occupied by them, or by persons for them, claiming under Christopher’s title, which was adverse from the time of the deed from Williams, then they would have an assurance of title, which, aided by lapse of time, would have perfected the title in them. The deed of Williams is dated November, 1856, and as the case must be reversed, because there is no proof of adverse holding of the land, except so far as actually occupied, and the jury have given a verdict in favor of defendant, as to the entire two hundred and fifty acres, we forbear to discuss the other questions raised, or x^resented, as to *589 the effect of the suspension of the statute of limitations, further than to refer to the decisions already made at this term, and at PTashville, on that subject, and say, we see no cause to change the views on which we have ruled on that question.
Reverse the case, and remand it for a new trial.
Jas. D. PORTER presented a petition for rehearing, insisting that the case of Ray v. Goodman ought not to be overruled because of the retrospective operation of a decision, and cited Walton v. Shelley, 1 T. R., 296; overruled in Jordaine v. Lashbrooke, 7 T. R., 601; followed in Stille v. Lynch, 2 Dall., 194, and ever since adhered to. This example of the Pennsylvania courts he insisted upon as the one to be followed.
PREEMAR,
delivered the following opinion:
A respectful, but very earnest petition is presented, asking a re-hearing and change of the opinion of the court in this case. "We have given it careful consideration, but do not feel it our duty to change the opinion announced.
"Whatever might have been -the holding of the court on the question decided in the case of Ray v. Goodman, the defendant had nothing by which his boundaries were defined, and could only hold to the extent of his actual occupation or enclosures, even though his holding had been adverse to the vendor; that is, so far as his claim under the con *590 tract under Love is concerned. If it was adverse in fact, then he gets the benefit of the actual adverse holding to the extent of his enclosures, or actual occupation, and could claim no more under any facts presented in the record.
■ Nothing in the opinion could prevent the de-feudazrt from showing actual adverse holding, if the fact -is that way, or an actual ouster, and holding under an adverse and independent title, openly and notoriously.
We have not time to go into an elaborate review of the reasoning of the opinion heretofore delivered, but content ourselves with saying, that we can see no reason to change the views therein expressed.